UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __04/11/2024__

TALIYAH TAYLOR,

                            Plaintiff,

    -against-

DR. MICHELLE SMALL et al.

                            Defendants.

No. 22-CV-2762 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

*Pro se* Plaintiff, Taliyah Taylor ("Plaintiff"), currently incarcerated at Bedford Hills Correctional Facility, brings this action under 42 U.S.C. § 1983, asserting claims of constitutionally inadequate medical care under the Eighth Amendment. (*See* Amended Complaint ("Amend. Compl.", ECF No. 25.) Plaintiff sues staff members employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), including Dr. Michelle Small, Dr. Patrick Prepetit, Dr. John A. McGurty, Dr. Laura Mieszerski, Superintendent Eileen Russel, Commissioner Thomas J Loughren, Chief Medical Officer John Morley, and Deputy Superintendent of Health McCarthy (collectively, "Defendants").

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Defendants have moved to dismiss the Amended Complaint. ("Motion", ECF No. 41.) For the following reasons, Defendants' Motion is GRANTED.

## FACTUAL BACKGROUND

### A. General Allegations

In February 2020, Plaintiff began experiencing recurring urinary tract infections. (Amend. Compl. at 1.) Between February 2020 and October 2022, Plaintiff was examined by various doctors, including multiple specialists, and prescribed several medications for her condition. Plaintiff alleges

that she has "written several letters advocating for different medications that are commonly known to treat and cure [her] condition, yet [she is] constantly being denied medical treatment that can reverse and heal [her] condition. (*Id.* at 6.) Plaintiff asserts that "[o]nce a medication or appointment is recommended both the pharmacy, Dr. McGurty or Albany interfer[e]s with that treatment option or appointment." (*Id.*)

## A. Specific Factual Allegations

On June 8, 2020, Dr. Prepetit recommended that the Plaintiff see a specialist, a urologist, for her health complications. (*Id.* at 1.) Plaintiff alleges this initial request was denied by Dr. Morley on an unspecified date because her primary care provider needed to get the medical request "granted by Albany as well as Dr. McGurty." (*Id.*) Plaintiff also requested an ultrasound on July 20, 2020, which was delayed by four weeks. (*Id.*) Plaintiff alleges that a second referral for her to see a urologist was submitted September 4, 2020 and denied by Dr. McGurty "due to covid." (*Id.*) Plaintiff alleges generally that it may take "2 weeks or longer" to see a doctor after she makes a request to see someone. (*Id.* at 6.)

Plaintiff alleges that she ultimately saw a urologist, Dr. Janice, on October 2, 2020, who recommended that Plaintiff undergo additional urological tests, including an in-camera inspection. (*Id.* at 6.) Plaintiff alleges that Dr. Prepetit also prescribed dandelion root to treat Plaintiff's urinary tract infection, which was denied by an unspecified person on an unspecified date. (*Id.* at 6.) Plaintiff alleges that she was informed by Dr. Small on October 27, 2020 that the recommendation to go out for such procedures was denied by Dr. Morley. (*Id.*) Plaintiff alleges that the recommended procedure, a cystoscopy, was ultimately performed on May 23, 2021, following "a 5-month delay from the recommended date." (*Id.* at 7.) Plaintiff also alleges that she was requested Uribel, a pain reliever on February 14, 2021, but did not receive the medication until two weeks later. (*Id.* at 11.)

Plaintiff further alleges that on May 23, 2021, she wrote to Dr. Small concerning a referral to a specialist regarding a painful uterus fibroid. *(Id.* at 8.) On June 4, 2021, Plaintiff once again saw Dr. Janice who recommended additional unspecified urological diagnostic testing. (*Id.* at 9.)  Plaintiff wrote to Dr. Small on May 23, 2021, to discuss seeing a specialist for the fibroid on her uterus. (*Id.* at 8.) Then, on June 24, 2021, Plaintiff was examined by Dr. Small, but Dr. Small decided not to prescribe any medication and denied Plaintiff's request for both an MRI and a test for herpes simplex. (*Id.*) Plaintiff alleges that at that time she had "suffered recurring urinary infections for 16 months" despite "the fact that [she] had taken every antibiotic, probiotic and vitamin that Dr. Small, Dr. Janice and Dr. Prepetit prescribed and the fact that the doctors had yet to have a definitive reason for [her] continued suffering." (*Id.* at 8-9.) Plaintiff indicates that on an unspecified date, she was finally tested for herpes simplex. (*Id.* at 9.)

On June 24, 2021, Plaintiff alleges that she also saw Dr. Moorjani-Harish, an infectious disease specialist, who recommended that she receive a catheterization twice a day for four weeks, beginning on June 28, 2021. (*Id.* at 11.) Plaintiff wrote to Dr. Prepetit to tell him that she was uncomfortable with catheterization risks before starting her treatment on June 28, 2021. (*Id.*) Then, on September 9, 2021, following the recommendation of Dr. Moorjani-Harish, Plaintiff began taking Turmeric and Biopeperine as treatment for her medical conditions. (*Id.* at 15.) Plaintiff claims that she did not receive these prescribed medications for eight weeks and that both medications were combined into one pill. (*Id.*) Plaintiff complained about the combined pills to Deputy Superintendent McCarthy, because, as Plaintiff claims, the medications should have been provided in separate pills. (*Id.*) Deputy Superintendent McCarthy informed Plaintiff that Dr. McGurty advised that she did not need to take two separate pills as both medications were contained in the one pill. (*Id.*)

Plaintiff "wrote to Dept. McCarthy to ask why no one requested an MRI or a CT scan and requested to see a kidney and uterus specialist" at an unspecified time. (*Id.* at 12.) Then, on August

17, 2021, she wrote to Dr. Prepetit to inform him that the pharmacy prescribed the wrong dosage of a medication, an error which took four weeks to correct. (*Id*.) Also, Plaintiff alleges that she was initially denied access to a nephrologist, but eventually was examined by one on October 5, 2021, three months after her initial request (*Id.* at 9-10.) Plaintiff also references a three-week delay of an appointment with Dr. Small without specific dates. (*Id.* at 10.) Plaintiff further states that on November 23, 2021, she received the CT scan which Dr. Moorjani-Harish recommended on July 29, 2021. (*Id.* at 16.)

Plaintiff alleges that on September 22, 2022, she wrote to Dr. Prepetit to receive "colloidal silver water; sage; St. John's wort; bochu, juniper; D-Mannose; and vaginal and colon irrigations" to treat her urinary tract infection, but as of the date of filing the Amended Complaint had not received a response. (*Id*. at 10.) Plaintiff also alleges that she requested intravenous antibiotics at an unspecified time after September 23, 2022, when she saw Dr. Mieszerski and found out her urine culture came back positive for E. Coli, but, as of the time of writing, she had not yet received a reply. (*Id*. at 10-11.)

Finally, Plaintiff alleges that she filed and appealed multiple grievances relating to her medical complaints to Superintendent Russell, the Superintendent at her correctional facility, who denied Plaintiff's appeals. (*Id*. at 16.) In addition, Plaintiff also asserts that she wrote letters to Dr. Morley and Commissioner Loughren at unspecified times regarding unspecified issues complaining that their "failure to take action" resulted in further medical delays. (*Id*.)

## PROCEDURAL HISTORY

On April 4, 2022, Plaintiff filed the original Complaint. (ECF No. 2.) On November 4, 2022, Plaintiff filed an Amended Complaint. (ECF No. 25.) The Amended Complaint is the operative complaint. Defendants filed the instant Motion on July 6, 2023. (ECF No. 41), as well as a

4

memorandum of law ("Defs.' MoL.", ECF No. 42) and reply (ECF No. 45), in support thereof. Plaintiff filed an opposition to Defs.' MoL. (ECF No. 43.)

## LEGAL STANDARDS

### A. Rule 12(b)(6) Motion to Dismiss Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether a complaint states a claim upon which relief can be granted, the court "begins by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but has not shown that the pleader is entitled to relief. *Id.*

*Pro se* complaints, however, are held to less stringent standards than those drafted by lawyers. *Thomas v. Westchester County*, 2013 WL 3357171 (S.D.N.Y. July 3, 2013). Because of this a *pro se* party's pleadings should be read, "to raise the strongest arguments that they suggest." *Id.* at 2. Applying the pleading rules permissively is especially appropriate when *pro se* plaintiffs allege civil rights violations. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Even in a *pro se* case, however, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d. Cir. 2010) (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable

inferences that [a *pro se* plaintiff's] complaint supports, [it] cannot invent factual allegations that [a *pro se* plaintiff] has not pled." *Id.*

### B. 42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

### DISCUSSION

Plaintiff's Amended Complaint asserts claims sounding in alleged Eighth Amendment violations. Specifically, Plaintiff alleges deliberate indifference to her medical needs. In their Motion, Defendants assert several grounds warranting dismissal of Plaintiff's claims: "(1) she has failed to state a cause of action; (2) her official capacity damages claims are barred by the Eleventh Amendment; (3) her state law claims are barred by Corrections Law § 24; (4) her claims are barred by qualified immunity; and (5) her new claims that post-date the filing of the initial pleading in this action are barred for lack of administrative exhaustion under the Prison Litigation Reform Act of 1995, 42 U.S.C. §1997e(a)." (*See* Defs.' MoL. at 1.) Because this Court finds that Plaintiff has failed

to state a plausible cause of action, the Court will not address Defendants' additional grounds for dismissal.

**Lack of Personal Involvement**

Plaintiff failed to establish the personal involvement of Commissioner Loughren ("Com. Loughren"), Deputy Superintendent McCarty ("Dept. Supt. McCarthy"), and Superintendent Russell ("Supt. Russell"). It is well settled that to hold a defendant responsible for a constitutional deprivation, a plaintiff must demonstrate, *inter alia*, the defendant's personal involvement in the deprivation. *Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). To do so, the plaintiff must "allege a tangible connection between the acts of a [d]efendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). A showing of personal involvement is a prerequisite to an award of damages under 42 U.S.C. § 1983. *Boley v. Durets*, 687 Fed. Appx. 40, 41 (2d Cir. 2017); *see also McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).

Claims involving prison officials "require[] a showing of more than the linkage in the prison chain of command." *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985). Simply being a supervisor is not enough to impute personal involvement onto a defendant; liability exists only where the "defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676); *see also Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060 (2d Cir. 1989) ("The general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the [d]efendant is required.") Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted).

*First*, Plaintiff pleads no factual allegations as to how Com. Loughren was involved in any decisions relating to Plaintiff's receipt of medical care. In fact, Plaintiff fails to allege any facts to

support an inference that Com. Loughren was aware or on notice of any medical condition concerning Plaintiff, let alone of mistreatment or a constitutional deprivation. She does not, for example, plausibly suggest that Com. Loughren personally reviewed and denied any of her grievances or requests, and instead only makes conclusory assertions, lacking factual support or specificity, regarding his liability. Moreover, "the New York State Commission of Correction…is simply a 'State Watchdog' agency…So even had [Com. Loughren] accepted [Plaintiff's] grievance, there likely would have been no benefit to [P]laintiff." *Jones v. Sheriff of Suffolk Cnty*., No. 18-CV-665 (BMC), 2020 WL 4287011, at *2 (E.D.N.Y. July 27, 2020). "'Members of the Commission [of Correction] are not endowed with any operational or supervisory responsibilities of the ... [DOCCS Facilit[ies] ... and thus have no power to control the internal policies or procedures of each institution.'" *Banks v. Annucci*, 48 F. Supp.3d 394, 414 (N.D.N.Y. 2014) (quotations omitted).  Under a theory of deliberate indifference, an individual who lacks the authority to remedy or "take action with respect to any constitutional violation" cannot be found to be personally involved. *Koulkina v. City of New York,* 559 F.Supp.2d 300, 317 (S.D.N.Y.2008); *see also Keesh v. Goord,* No. 04 Civ. 271A, 2007 WL 2903682, at *6 (W.D.N.Y. Oct. 1, 2007) (finding no personal involvement where defendant who oversaw prisoner grievances signed determination made by committee on plaintiff's grievance but did not have voting power regarding decision). Accordingly, Plaintiff's claims against Com. Loughren are dismissed.

*Second*, regarding Dept. Supt. McCarthy, Plaintiff alleges she "wrote to Dept. McCarthy to ask why no one requested an MRI or a CT scan and requested to see a kidney and uterus specialist." (Amend. Compl. at 12.) Additionally, Plaintiff complained to Dept. Supt. McCarthy about the combined medication pills she received, which Plaintiff claimed should have been provided in separate pills. (*Id*. at 15.) In response, Dept. Supt. McCarthy informed Plaintiff that Dr. McGurty advised the pills did not need to be taken separately (meaning as two separate capsules or pills) and

can be taken in the combined one pill form. (*Id.*) Even assuming, *arguendo*, that Plaintiff's complaints to Dept. Supt. McCarthy alleged unconstitutional conduct (which the Court does not find), "[a] supervisory official's receipt of a letter complaining about unconstitutional conduct is not enough to give rise to personal involvement on the part of the official." *Brooks v. Chappius*, 450 F. Supp. 2d 220, 225–26 (W.D.N.Y. 2006) (internal citations omitted). Dept. Supt. McCarthy responded to Plaintiff, but even if she had ignored her, "the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement." *Id*. at 226 (quoting *Thomas v. Coombe*, No. 95 Civ. 10342, 1998 WL 391143, *6 (S.D.N.Y. July 13, 1998)). Accordingly, in light of Plaintiff's failure to allege any personal involvement on the part of Dept. Supt. McCarthy in an alleged constitutional violation, the claims are deemed dismissed.

*Finally*, in connection with Supt. Russell, Plaintiff alleges that each time a grievance was appealed to Supt. Russell "she denied [Plaintiff's] medical request" despite having "the ability to ensure that [Plaintiff got] the medical assistance that [Plaintiff] needed." (Amend. Compl. at 16.) A supervisory official's denial of a grievance can suffice to show personal involvement for purposes of Section 1983, *Atkinson v. Selsky*, No. 03 Civ. 7759, 2004 WL 2319186, at *1 (S.D.N.Y. Oct.15, 2004), but only where "the supervisor's response is detailed and specific," such that it provides some indicia of knowledge or familiarity with the inmate's condition and "fail[s] to remedy the wrong." *McKenna v. Wright,* No. 01 Civ. 6571, 2004 WL 102752, at *5 (S.D.N.Y. Jan.21, 2004); *see also McClenton v. Menifee*, No. 05 Civ. 2844, 2006 WL 2474872, at *10 (S.D.N.Y. Aug. 22, 2006) ("a supervisor's mere denial of a grievance is insufficient to establish personal involvement; otherwise, senior administrative officials could generally be named as defendants in prison condition cases"). "[T]he receipt of letters or grievances, by itself, does not amount to personal involvement." *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. Feb. 8, 2010); *Thomas v. Morley*, No. 20 Civ. 7520, 2022 WL 394384, at * 6 (S.D.N.Y Feb. 9, 2022) (no personal involvement where defendants allegedly

received grievances and complaints). Here, Plaintiff merely alleges that Supt. Russell received and denied her grievances, which is insufficient to support an Eighth Amendment violation. *See Mateo*, 682 F. Supp. 2d at 430. Plaintiff does not allege, for example, that Supt. Russell's denials were sufficiently detailed that when read objectively demonstrated that he was on notice of the existence of constitutional violation. Accordingly, the claims against Supt. Russell are deemed dismissed due to the lack of personal involvement.

## Eighth Amendment Medical Indifference Claim

The Eighth Amendment prohibits the infliction of cruel and unusual punishment, U.S. Const. amend. VIII, which includes the failure to provide incarcerated persons with adequate medical care, *Estelle v. Gamble,* 429 U.S. 97, 103-05 (1976). To state a claim for medical indifference, an inmate must show that (1) she had an objectively serious medical need, and (2) the defendant acted with subjective deliberate indifference, which measures whether the prison official acted with a sufficiently culpable state of mind. *Harrison v. Barkley*, 219 F.3d 132, 136–38 (2d Cir. 2000). Under the Eighth Amendment, a physician may be deliberately indifferent if she consciously chooses "an easier and less efficacious" treatment plan. *Williams v. Vincent,* 508 F.2d 541, 544 (2d Cir. 1974) (finding deliberate indifference where prison doctors chose to close a wound caused by the severing of plaintiff's ear rather than attempting to reattach the organ). For example, if a physician made an "intentionally wrong" recommendation "because of monetary incentives," *Chance v. Armstrong*, 143 F.3d 698, 704 (2d Cir. 1998), or proceeded with treatment where the risk was "obvious" and based on a particular "confluence of factors," including the defendant "proceeding with insufficient time, ignoring yells of pain, breaking the tooth, [and] repeatedly slipping and stabbing the area," *Gaffney v. Perelmuter*, 805 F. App'x 53, 57–58 (2d Cir. 2020), he could be liable. "[M]ere disagreement over the proper treatment" afforded to a prisoner, however, is not sufficient to state an Eighth Amendment violation. *Chance*, 143 F.3d at 703 (internal citations omitted). "So long as the treatment given is

adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.* Additionally, "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Id.* (citing *Estelle*, 429 U.S. at 105-106).

      Furthermore,

> [w]hen the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition alone* in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim.

*Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (quoting *Chance*, 143 F.3d at 702) (emphasis in original). Accordingly, "the failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment." *Id.* at 186 (citing *Chance*, 143 F.3d at 702). "[W]here the alleged lapses in treatment are minor and inconsequential," however, "[s]uch risks may be absent," and therefore not give rise to an Eighth Amendment violation. *Id.*

      Based on the Amended Complaint and the documents incorporated therein, the Court finds that Plaintiff's allegations do not sufficiently plead a claim for inadequate medical care under the Eighth Amendment. The gravamen of Plaintiff's complaint is that Defendants intentionally denied and unreasonably delayed her access to medical care and interfered with her prescribed treatment. (*See* Amend. Compl. at 5-18.) In terms of being denied medical treatment, Plaintiff asserts that she has written "several letters advocating for different medications that are commonly known to treat her and cure [her] conditions, yet [she is] consistently denied medical treatment that can reverse and heal [her] conditions." (*Id*. at 6.) Plaintiff's Amended Complaint makes it clear, however, that she was seen numerous times by the Defendant medical personnel and provided with extensive medical care, including referrals to outside specialists and various forms of diagnostic testing. (*See, e.g., id.* at 6, 8, 11, 13.) Multiple primary care physicians examined Plaintiff and prescribed her antibiotics,

as well as other medications, and extensive testing, including but not limited to CT scans and in-camera inspections. (*See generally id.*) The fact that some of the prescribed treatment may have been unsuccessful and continued to cause Plaintiff pain and discomfort does not give rise to a constitutional violation, *Estelle*, 429 U.S. at 105-6, where, as here, there is no evidence that Defendants consciously ignored Plaintiff's complaints or refused to treat her condition. On the contrary, Plaintiff received a litany of tests and treatment as part of her constitutionally adequate care. *See Risch v. Hulihan*, No. 9:09-CV-330, 2010 WL 5463339, at *8 (N.D.N.Y. Dec. 29, 2010).

Perhaps Plaintiff would have preferred a different course of treatment – such as those suggested in her several letters to Defendants – but she "has not alleged facts that would allow [the Court] to plausibly infer that any alternative treatment plan would have been better overall, let alone that [Defendants] had any improper reason to eschew the better treatment." *Thomas v. Wolf*, 832 F. App'x 90, 93 (2d Cir. 2020). Moreover, "disagreements over medications, diagnostic techniques, forms of treatment or the need for specialists or the timing of their intervention" are not actionable, *Fate v. Goord*, 2012 WL 3104884, at *6 (S.D.N.Y. July 31, 2012). Plaintiff has additionally not argued that Defendants "knew that the prescribed course of treatment would be ineffective," and still chose to follow it. *Tolliver v. Sidorowicz*, 714 F. App'x 73, 74 (2d Cir. 2018). Although Plaintiff may have found Defendants' medical care "unsatisfactory," she "did not go for any significant period of time without medical care." *Sledge v. Fein*, No. 11 CIV. 7450 PKC, 2013 WL 1288183, at *7 (S.D.N.Y. Mar. 28, 2013). Therefore, even assuming the pain associated with a urinary tract infection is sufficiently serious to satisfy the objective element of the deliberate indifference test, the care Plaintiff received was more than adequate to satisfy constitutional requirements.

Also fatal to Plaintiff's claim is the failure to indicate that any of the delays in her treatment caused sufficiently serious injury to give rise to an Eighth Amendment violation. *See, e.g., Evans v. Bonner*, 196 F.Supp.2d 252, 256 (E.D.N.Y.2002) (holding that untimely provision of medication to

12

HIV-positive inmate did not cause sufficiently serious injury to give rise to an Eighth Amendment violation). Although Plaintiff alleges delay times between when procedures were recommended and when procedures were performed, *see, e.g.,* Amend. Compl. at 5, 7, 10, Plaintiff does not specifically allege how such delays caused seriously sufficient injury.

In sum, Plaintiff's allegations against Defendants arise from disagreements over the proper course of medical treatment she should have received, an inquiry which the Second Circuit has found insufficient to create a constitutional claim absent allegations that the treatment given was inadequate. *See Chance*, 143 F.3d at 703. Additionally, although Plaintiff alleges delays in treatment, Plaintiff fails to allege how such delay in treatment was a deprivation in "'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith*, 316 F.3d at 185 (quoting *Chance*, 143 F.3d at 702). Accordingly, Plaintiff's Eighth Amendment medical indifference claim is dismissed for failure to state a claim.

**Leave to Amend**

The Second Circuit has advised that "a *pro se* plaintiff who is proceeding *in forma pauperis* should be afforded the same opportunity as a *pro se* fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 796 (2d Cir.1999) (per curiam). Accordingly, the Court dismisses all of Plaintiff's claims without prejudice, granting her leave to amend her claims.

**CONCLUSION**

For the foregoing reasons, the Defendants' motion to dismiss the Amended Complaint is GRANTED and all claims are dismissed without prejudice. Plaintiff is granted leave to file a Second Amended Complaint as to any claims that have not been dismissed with prejudice. If Plaintiff chooses

to do so, Plaintiff will have until May 15, 2024, to file a Second Amended Complaint. The Defendants are then directed to answer or otherwise respond by June 5, 2024.

If Plaintiff fails to file a Second Amended Complaint within the time allowed, and she cannot show good cause to excuse such failure, any claims dismissed without prejudice by this Order will be deemed dismissed with prejudice.

The Clerk of Court is kindly directed to terminate the motion at ECF No. 41, mail a copy of this Order to *pro se* Plaintiff at Plaintiff's address listed on ECF, and show service on the docket.

Dated: April 11, 2024                                  SO ORDERED:

White Plains, New York

_____

NELSON S. ROMÁN

United States District Judge